UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| ANDREW U. D. STRAW, | ) | |
| *Plaintiff,* | ) | |
| v. | ) | Case No.: 1:16-cv-3483 |
| INDIANA SUPREME COURT; | ) | |
| BRENDA RODEHEFFER; | ) | <u>Hon.</u> |
| G. MICHAEL WITTE; | ) | Judge Presiding |
| CHIEF JUSTICE OF INDIANA | ) | <u>Hon.</u> |
| LORETTA RUSH; | ) | Magistrate Judge |
| LILIA G. JUDSON; AND | ) | |
| HEARING OFFICER | ) | |
| JAMES ROBERT AHLER, | ) | |
| *Defendants.* | ) | Jury Trial Demanded |

## VERIFIED COMPLAINT TO PROTECT DISABILITY RIGHTS

I, *plaintiff* Andrew U. D. Straw, for my Complaint against the defendants herein, claim that they discriminated against me on the basis of disability, repeatedly retaliated when I opposed discrimination, and attempted to prevent me from making commentary protected by the First Amendment, and so violations of 42 U.S.C. § 1983, 42 U.S.C. § 1985(2) and 1985(3), and imposed intentional infliction of emotional distress on me by accusing me of disciplinary rule violations without merit and tried to discipline me outside the time limits in those rules. The disciplinary rules themselves discriminate on their face. Defendants had a duty to protect my rights under 42 U.S.C. § 1986, but failed to do so.  For violations of the above laws and ADA Title II and Rehabilitation Act of 1973, Section 504, I claim relief to compensate me for violating my right to be free of embarrassment and humiliation, intimidation and coercion over the last 15 years, and further relief to complete justice.  To wit:

## PERSONAL FACTS

1.     I am an attorney, Active in Good Standing through 2017, licensed in the State of Indiana, Bar# 23378-53. I also have a license in the Commonwealth of Virginia, VSB# 43651, currently in In Active in Good Standing Status through 2017.

2.     My Roll of Attorneys entry has contained reference to "pending discipline" against me since January of 2016.

3.     I have also been licensed to practice law before the Northern and Southern Districts of Indiana since 2002.  I am licensed in the Northern District of Illinois and the Western District of Wisconsin U.S. District Courts.  I am admitted to the bar of the U.S. Court of Appeals for the Fourth Circuit.

4.     If the Indiana Supreme Court disciplines me, each of the above courts has reciprocal discipline rules and if I am suspended in Indiana, I will receive many orders to show cause why I should not be disciplined in the same way, and in some cases, the reciprocal discipline is automatic.

5.     My residence is in Kane County, Illinois. I am an Illinois registered voter and my residence is 120 S. State Street, Unit 307,

Elgin, Illinois, 60123.  This is public housing.  My registered agent and official office mailing address is located at 1900 E. Golf Rd., Suite 950A, Schaumburg, IL 60173.

6.     I have a lawsuit against the City of South Bend for city-wide ADA violations in handicap parking, sidewalks that are broken, and other access features broken or not provided.  *Straw v. City of South Bend*, 3:16-cv-342-JD-MGG (N.D. Ind.).  This case demonstrates my continuous work for disability access.

7.     When I criticized the City Attorney, Aladean DeRose, with a website in her name, she sued me in state court.  She is in fact the ADA Coordinator and the Counsel for the South Bend Human Rights Commission.  She retaliated against me for having opposed ADA violations and associating them with her name.  This retaliation is similar to what the Indiana Supreme Court ADA Coordinator did. *DeRose v. Straw*, 71D07-1611-PL-000418 (St. Jos. Cty. Sup. Ct. 7)

8.     I face similar acts of ADA violation and illegal retaliation across Indiana.  I believe the rotten core of this apple is the Indiana Supreme Court.

## DISABILITIES

9.    I have severe physical and mental disabilities from public service.

I hereby incorporate by reference my affidavit regarding disabilities,

Exhibit 4, and all evidence thereof mentioned in that affidavit, Exhibits

5-10.

## EVIDENCE OF DISCRIMINATION

10.    It is easy to understand the pervasive disability discrimination of

the Indiana Supreme Court and its agencies.  One need merely read

and consider the Indiana Supreme Court Attorney Admission and

Discipline Rules.

11.    Rule 23, Section 2(c) explains how people with disabilities are not

welcome to be lawyers in Indiana:

> "(c)    Any attorney who becomes disabled by reason of physical or
> mental illness or infirmity or because of the use of or addiction to
> intoxicants or drugs **shall be subject to suspension by reason of
> such disability**."

> http://www.in.gov/judiciary/rules/ad_dis/

12.    Another example of the inherent disability discrimination and

refusal to provide services is the case management proposal put forward

by Lilia Judson, former state court administrator.  No reference to

disability is provided on the Supreme Court webpage:

http://www.in.gov/judiciary/admin/2666.htm

13.    The lack of any reference to disability or accommodations in this major new system goes back to when I was still working at the Court:

http://www.in.gov/judiciary/admin/files/jtac-cms-policy-statement.pdf

14.    Unlike the Court and its callous nature, when I worked at the Supreme Court of Indiana, I reached out to deaf Hoosiers, seeking their input on my work as a senior staff member of the Court.  I appealed to the Supreme Court's JTAC committee to provide software to help a blind trial judge.

15.    I believe the firing and attacks over the years came in part from my pursuing disability access on my own initiative, as part of my job.

16.    I have complained multiple times to every member of the Indiana House and Senate via email, and each time I did so was about 150 oppositions to discrimination.  I have complained to the Indiana media, and despite the fact that they are reluctant to run stories against the Supreme Court, revealing its systematic discrimination, each email to each media outlet was a new opposition to discrimination.  Each

protected under 42 U.S.C. § 12203 from interference, coercion,

retaliation, and intimidation.

17.   I fully incorporate by reference:

   a. my 2014 Petition for Redress of Grievances (Ex. 11),

   b. the ADA Coordinator's refusal to provide relief (Ex. 12),

   c. the retaliatory disciplinary complaint issued shortly thereafter
   (Ex. 13),

   d. the verified disciplinary complaint against me (Ex. 14),

   e. the appointment of a hearing officer by the Chief Justice of
   Indiana (Ex. 15),

   f. my answer to the verified complaint against me (Ex. 16),

   g. the CCS Docket sheet showing my many unopposed motions for
   relief over a series of 6 months (Ex. 17),

   h. my copious February 17, 2016, affidavit regarding
   discrimination by the Indiana Supreme Court (Ex. 18),

   i. the Disciplinary Commission's over 5 months late request for a
   hearing officer report (Ex. 19), and

   j. the illegitimate and discriminating and false hearing officer
   report dated 12/16/2016 (Ex. 20), which attempts to suppress my

freedom of speech when I opposed his and others' disability discrimination.

18.   In short, I have experienced 15 years of continuous disability discrimination since I broke both my legs and pelvis working at that state supreme court.

19.   In addition, I have experienced a retaliatory disciplinary complaint filed by the Indiana Supreme Court *ADA Coordinator* of the same state supreme court I accused of discrimination since 2001.

20.   Her complaint mentioned my disability from Camp LeJeune poisoning, and instead of protecting me for my lifetime of injury from my father's service, she attacked me.

21.   The officer charged with protecting my disability rights retaliated against me when I complained about her employer's discrimination.

22.   Not only have I carried the heavy burden of discrimination since I came back to work after my car accident, but that Court also forced me to reveal my Camp LeJeune poisoning disability, bipolar disorder, on the bar exam application.

23.   I had no criminal history, no ethics problems, and I passed the bar exam, but my disability was the subject of a hearing and people with

whom I worked were given information about my disability.  This was outrageous disability discrimination and never compensated.

24.    My lawyer in 2002 told me I should not oppose the Indiana Supreme Court or my law career would be absolutely ruined.  Given what has happened to me, I would say my career was destined to decades of interference and ruination no matter if I opposed the discrimination or not.  But once I did oppose it, retaliation increased.

25.    This case is about the disciplinary complaint begun in 2014.

26.    I presented a Petition for Redress of Grievances (a First Amendment right) to the Clerk of Court for the Indiana Supreme Court in August of 2014.  (Ex. 11).  The Clerk refused to even file it, twice, even though it concerned a former employee and a bar admission matter.

27.    That Clerk, Kevin Smith, provided my petition to the ADA Coordinator, who proceeded to do exactly nothing to protect my rights. (Ex. 12)

28.     The ADA Coordinator, Brenda Rodeheffer, refused to help, but wrote me an email saying she hoped I would "heal" from the painful disabilities.

29.   Her way of helping me "heal" was to file a disciplinary complaint just days after she received and rejected my Petition complaints about the Court.

30.   ADA Coordinator Rodeheffer filed this complaint on September 3, 2014.  (Ex. 13)

31.   I complained about violations of the ADA when I worked at the Indiana Supreme Court, including removing my handicap parking space close to the offices when I still needed it, causing me intense physical pain daily.  (Ex. 18, *passim*)

32.   The ADA Coordinator gave a copy of her as-yet uninvestigated disciplinary complaint against me to another lawyer who did not work for the Indiana Supreme Court, Thomas M. Dixon.

33.   This **retaliated** and **violated** my disability privacy yet again, much like in 2002 when the State Board of Law Examiners held a hearing about my bipolar disorder in front of people with whom I worked.

34.    Mr. Dixon took the disciplinary complaint and filed it in a court case for malpractice against me. *Sconiers v. Straw*, 71D07-1310-CT-000265 (St. Jos. Cty. Sup. Ct. 7)[1]

35.    In this malpractice case, I never agreed to file a federal lawsuit for my former client, but she sued me because I did not.  She did not ask me to file such a lawsuit when negotiations failed, and I said I would not in my representation agreement with her.  She had no damages, because she kept working at the same place, was given raises each year, and her sexual harassment antagonist voluntarily resigned a few months after I complained for her to her employer.

36.    So, my former client received monetary and other benefits because of my negotiations work, but she wanted damages on top of that from her employer, and from me.  This was dishonest because I was under an ethical obligation NOT to file a lawsuit unless that service was agreed in advance.  I received $0 from the many hours I worked on her case, and finally ended up with this bogus malpractice suit, **supported by the Indiana Supreme Court and its ADA Coordinator**.

_____

[1]
https://public.courts.in.gov/mycase/#/vw/CaseSummary/eyJ2Ijp7IkNhc2VUb2tlbiI6Ik1URTJNalF3TmpFeU1qqSXhPak14TXpqVNE56VXhZVE09In19

37.   My insurance company wished to settle the matter when it saw Rodeheffer's disciplinary complaint was placed in the state trial court record.  The financial injury to me and my insurance happened on or about July 15, 2015.  I still owe $5,000 in deductible costs.

38.   I denied the four counts in the Verified Complaint filed by G. Michael Witte, Disciplinary Commission Executive Director.

39.   I filed an answer in response that completely exploded each count, each attack on me.  (Ex. 16)

40.   Each one of the counts concerned a disability rights issue or, in three cases, an ADA case filing.

41.   Retaliation against an ADA case filing or opposition to discrimination violates 42 U.S.C. § 12203, so on its face, the Verified Complaint **retaliated at least four times**.

42.   The hearing officer denied every motion I made to protect my disability rights, and those ADA rights overrode any provision in the rules, since 42 U.S.C. § 12132 & 12203 prevail over any state law. There were a multitude of different retaliations and discrimination from the hearing officer, Officer Ahler.

43.    Indiana Rules of Admission and Discipline provide time limits for

the hearing officer to submit a report and either support or reject

punishment.  Disciplinary Rule 23, Section 14(i), provided 30 days after

the May 12, 2016, hearing to submit a report:

> **Within thirty (30) days** after the conclusion of the hearing, the
> hearing officer **shall** determine whether misconduct has been
> proven by clear and convincing evidence and shall file with the
> Clerk a written "Hearing Officer's Report" with findings of fact
> and conclusions of law.  Either party may request or the hearing
> officer at his or her own motion may make a recommendation
> concerning the disposition of the case and the discipline to be
> imposed.  Such recommendation is not binding on the Supreme
> Court.  A copy of the report shall be served by the hearing officer
> on the respondent and the Executive Secretary of the Disciplinary
> Commission at the time the report is filed with the Clerk.[2]

44.    Officer Ahler not only did not provide such a report under the

mandatory time limit, but after Disciplinary Commission lawyer Angie

Ordway suborned him to make a late report, Officer Ahler filed a report

on December 16, 2016, over 6 months past the deadline.  (Ex. 19 & 20)

45.    The Disciplinary Commission also had a deadline in the Rules,

Rule 23, Section 15, which provided 30 days to appeal.  That 30-day

deadline also passed back in July of 2016.

---

[2] http://www.in.gov/judiciary/rules/ad_dis/#_Toc439239769

46.    Ahler criticized my free speech against this process to violate my rights, and his attacks on me also constitute retaliation under 42 U.S.C. § 12203.  His attacks and recommendation to punish me contribute to a conspiracy against my rights that has existed since 2001 in the Indiana Supreme Court and its agencies.  42 U.S.C. § 1983 and 42 U.S.C. § 1985(3).

47.    Ahler should have protected me and dismissed an obviously abusive disciplinary complaint, especially when he saw that the attack came from the *ADA Coordinator* after I made a complaint to her.  Ahler had a duty to protect me under 42 U.S.C. § 1986, and he had the power to do so.  This is yet another violation.

48.    The same problem is true of the Chief Justice of Indiana.  Loretta Rush should have protected me and dismissed an obviously abusive disciplinary complaint, especially when she saw that the attack came from the *ADA Coordinator* after I made a complaint to her.  Loretta Rush had a duty to protect me under 42 U.S.C. § 1986, and she had the power to do so.  This is yet another violation.  She participated in the conspiracy under 42 U.S.C. § 1985(3).

49.   I filed a response to the proposed discipline (Ex. 21) on December 19, 2016.

50.   The disciplinary case against me was transmitted to the Indiana Supreme Court on December 21, 2016. (Ex. 17)

51.   I claim that every discrimination or retaliation or failure to protect me and my rights was a separate and actionable ethics violation of Indiana Rule of Professional Conduct, Rule 8.4(g).

52.   When I made complaints against the ADA Coordinator, Attorney Dixon, and Lilia Judson, IADC Executive Director G. Michael Witte refused to punish the flood of discrimination and attacks against me.

53.   When I complained against Witte, Lilia Judson then returned him the favor, clearing him even though he violated me by not protecting me.

54.   Each refusal to protect me was a violation of 42 U.S.C. § 12203's anti-retaliation mandates.  Each refusal to protect me involved Witte in an ongoing conspiracy against my rights under 42 U.S.C. § 1985, and because he was in a position to protect me rather than attack me, Witte violated 42 U.S.C. § 1986.

## STANDING AND OTHER LEGAL ARGUMENTS

55.    I have been injured by the burden of an illegitimate and retaliatory disciplinary complaint from the ADA Coordinator, who had no business filing such a complaint in response to ***my complaint*** about her boss, the Indiana Supreme Court.  42 U.S.C. § 12203 was passed specifically to prevent this type of abuse by a state court or other state entity.  I have standing because the Indiana Supreme Court injured me for fully the last 15 years without remorse.  That Court cared nothing about the impact on me and my family.  (Ex. 18).

56.    I have standing because the ADA Coordinator, Brenda Rodeheffer, attacked me personally in direct response to my complaint petition, and this disciplinary process dragged on for 27 months as of December 2016. Her explicit refusal to meet with me to discuss discrimination by the court where she works renews my standing and makes injury continuous from now forward.  (Ex. 22)

## COUNT I: INDIANA SUPREME COURT ADA COORDINATOR BETRAYAL AND RETALIATION AGAINST PETITION FOR REDRESS OF GRIEVANCES FOR DISABILITY VIOLATIONS, 42 U.S.C. § 12203

57.    The ADA Coordinator has no authority or power to retaliate against a disabled lawyer who brings issues to her, especially when the complaint is about her employer, the Court.  Violations of 42 U.S.C. §

12203 amount to an indeterminate number for not helping me with the over 10 years of problems identified clearly, **plus 1** for the actual disciplinary complaint that she filed, **plus 1** for circulating that complaint outside the Court to Attorney Dixon, **plus 1** for the sarcastic email hoping that I would "heal," but not mentioning the upcoming 27 months of investigation she started.  I filed the same complaint with the entire Indiana state legislature when I filed it with the Court, and this action is protected under the First and Fourteenth Amendments, 42 U.S.C. § 12203, 42 U.S.C. § 1986, and the Indiana Bill of Rights, Section 31.  Also, the ADA Coordinator, Brenda Rodeheffer, has informed me that **she will not meet with me to discuss disability violations** by the Court.  I am, therefore, shut out of her services as ADA Coordinator. That is an **additional violation**.  So, **4 specific violations** since 2014, plus a **large and indeterminate number of violations** because she would not help me with long-term violations of my disability rights by the Court.

## COUNT II: INDIANA SUPREME COURT ADA COORDINATOR DISCRIMINATED BASED ON MY BIPOLAR DISORDER, WHICH CAME FROM CAMP LEJEUNE AND JACKSONVILLE NAVAL AIR STATION POISONING

58.   The ADA Coordinator made a judgment in her disciplinary complaint against me that my physical disabilities from breaking both

16

my legs and my pelvis on the way to work at this Court do not affect my ability to practice law.  Then she made the observation and apparent medical diagnosis that my mental disability (bipolar disorder) made me incompetent to practice law.  (Ex. 13)

59.     In other words, her discriminatory complaint in retaliation to my complaint included an attack on a disability I received from my father's service in the U.S. Marine Corps when he was training for Vietnam. My father earned the right for his poisoned children to be treated with respect.

60.     I had a U.S. Navy JAG Code 15 office complaint in 2014 for violation of my Federal Tort Claims Act injuries, and I claim Rodeheffer retaliated for this.

61.     In fact, I have filed several U.S. District Court cases for my family that were consolidated into the MDL in Georgia.  *In RE: Camp LeJeune Water Contamination*, 1:11-md-2218-TWT (N.D. Ga.).

62.     Taking any action against my Camp LeJeune disabilities is retaliation for my opposing poisoning and the attending disabilities, death, and discrimination.  My work is paving the way for compensation

for 200,000 or more family members of 800,000 U.S. Marines, all of whom were poisoned and disabled or killed on the base.

63.  Rodeheffer's referencing my mental disability from Camp LeJeune as a reason to discipline my license represents 1,000,000 violations of 42 U.S.C. § 12203.

64.  I should be compensated 1,000,000 times the value of each injury.

65.  This Rodeheffer disciplinary complaint has shadowed my Camp LeJeune cases, and that comment about Camp LeJeune injury making me incompetent now has blossomed into a full-blown threat to my ability to even take an appeal or protect my other family members, or protect the rights of 800,000 U.S. Marines and their poisoned 200,000 family members.

66.  This Indiana Supreme Court is interfering in something that is much bigger than the entire history of the State of Indiana.  It is attempting to interfere with justice for the people who ensure that the State of Indiana continues to exist.

67.  The U.S. Marine Corps was established in 1775, and I am the child of a U.S. Marine.

68.  I was born aboard Camp LeJeune U.S. Naval Hospital.

69.    I was taught how to walk by a U.S. Marine.

70.    That ability to walk was continuous until my car accident on the way to work at this most ungrateful Indiana Supreme Court.

71.    My father served in Vietnam and he was decorated for "gallantry and heroic action in fighting the enemy."  RVN Cross of Gallantry.

72.    The small and wicked mind of the ADA Coordinator was completely hostile to her purpose and her office.  She was determined to injure me, not help me as a disabled lawyer.  She was determined to prevent me from being able to use the ADA to help disabled people.  She helped me in no way whatsoever, and that shows the attitude of the Indiana Supreme Court, which deserves to be punished severely, along with its bureaucrats like Brenda Rodeheffer.

73.    Why even have an ADA Coordinator when no disabled person can be a lawyer?  Disciplinary Rule 23, Section 2(c).  Rodeheffer exemplified this fact, and she now refuses to meet with me to talk about disability discrimination at that Court.  (Ex. 22)  I am again singled out for **denial of services**.  42 U.S.C. § 12132, 12203.

74.    If any action of the Indiana Supreme Court prevents in any way whatsoever my work on Camp LeJeune poisoning justice, the State of

Indiana must pay the entire amount for me and my family, and *every other family injured by my inability to act as a lawyer*.  Just to be clear, I am talking about over $25,000,000 in damages that *my family* seeks in total.  My brother's claim is still with Navy JAG Code 15.

75.    I have informed the U.S. Court of Appeals for the Eleventh Circuit that the Indiana Supreme Court is attacking my license because I protected disability rights in federal court and I asked the Court of Appeals to protect me.

## COUNT III: INDIANA SUPREME COURT'S 15 YEARS OF CONTINUOUS DISABILITY-BASED DISCRIMINATION AGAINST ANDREW STRAW

76.    The Court has continuously injured me since my car accident and since it forced me to reveal my Camp LeJeune disability.  (Ex. 18)

77.    That conspiracy over a long time is connected to the discrimination and retaliation of today.  There is no stopping point. This bus has run over me, backed up, run over me again, and continued this pattern for 15 years.  It violates 42 U.S.C. § 12203 every single time that it did so, and *the pattern* also violates 42 U.S.C. § 12203.

## COUNT IV: 27 MONTHS OF DISABILITY DISCRIMINATION IN THE FORM OF AN INTERMINABLE INVESTIGATION, WITH DEFAMATION ON STRAW'S ROLL OF ATTORNEYS ENTRY, AND AN ATTEMPT TO PUNISH HIM IN HIS LAW LICENSE DESPITE

## ALL DEADLINES FOR DOING SO HAVING PASSED, CREATING A DUE PROCESS PROBLEM

78.    The Indiana Supreme Court and its agencies inflicted extreme emotional distress on me, causing me mental anguish, physical damage to my heart, and has torn me apart for years.  I have lived in poverty, using food stamps, and lived in public housing.  I have been unable to see my children for years, and my physical and mental symptoms from my public service disabilities have been made worse.

79.    A forensic psychologist will testify to these injuries and provide scientific tests as proof.

80.    The disciplinary complaint was made in bad faith, to injure me and prevent me from being a disability rights attorney.

81.    The length of the process, over 27 months, was harassment and humiliation and it appeared in my Indiana Roll of Attorneys entry in January 2016 and continuously thereafter.

82.    The Due Process clause of the U.S. Constitution's Fourteenth Amendment was thrashed.  I had no due process.  My motions were uniformly denied even though all were justified to protect my disability rights.  The length of the process violated Due Process.  Trying to punish me with a report 6 months past the mandatory Rule 23, Section

14(i), deadline was also a due process violation.  Everything about this

was a due process violation, and I should be compensated for it.

## COUNT V: HEARING OFFICER REFUSED EVERY MOTION STRAW MADE FOR RELIEF, THEN ATTACKED STRAW FOR OBJECTING TO THE VIOLATIONS OF HIM, CREATING A FIRST-AMENDMENT ISSUE IN ADDITION TO VIOLATION OF 42 U.S.C. § 12203

83.    The hearing officer refused to allow me to make motions.  (Ex. 17).

He denied every motion, using excuses that did not overcome his

obligations under the ADA to stop violating me.  42 U.S.C. § 12203.  He

attacked my criticism of this process, and even attacked my statement

implying I would outlast the Commission staff.  I have a right to

complain and a right to say that I will "bury" the violators and get

justice at long last.  After 15 years with NO JUSTICE, this is a hope I

cling to like a life raft.

84.    After another 27 months of harassment and humiliation, I have a

right to object and even to *scream* at such people, who have done their

best to ruin my life.  I am a disability rights politician and have filed

with the Secretary of the U.S. Senate to be the Indiana Disability Party

candidate for U.S. Senate in 2018.  *In Re: Andrew Straw*, 29D02-1612-

MI-010994 (Hamilton Cty. Sup. Ct. 2).  I can scream my objection to the

disability violations against me like any political demonstrator.  Like a

U.S. Senate candidate.

85.    I think what the Indiana Supreme Court did to me over such a

long period makes them psychopaths with no conscience or regard for

my rights.  Even after I broke my legs and pelvis going there to work,

they feel they can attack me incessantly and interfere with my

disability rights work.

86.    I say to hell with the violators, all of them, and I demand justice

now.

87.    Hearing Officer Ahler and the others are like the concentration

camp operators expressing "concern" about their victims' anger and

their "opinions."  He should be afraid of me.  He should be afraid that I

will use *the law*, something he proved he knows nothing about, and get

justice against *him*.  I want his judicial commission to be stripped.

88.    I am asking lady justice, blind like I am when I have a Camp

LeJeune migraine, to bury him and his co-conspirators with her sword

of justice.

89.    My social worker over here in Elgin, Illinois, remarked to me last

week that no single person, and certainly not a person with the heavy

burden of disabilities I have, should be subject to such vicious and constant discrimination over so many years.

90.    But that's precisely what I deal with.  I have a serious mental illness caused by the federal government poisoning me, and the proof that I manage it well is the fact that I use *the justice system* and this Court to pursue my rights and not some private means that would be illegal.

91.    I don't believe in vigilante justice.  I do believe in free speech against wicked government that has no remorse.  I believe in **law**.

92.    I want the judges of this nation to *finally* protect me, and I will keep asking until I reach a complete dead end.

93.    And when I reach that dead end, I will be asking for justice from our political system and the People, because I don't believe Americans are even aware of the callous people that run the Indiana Supreme Court.

94.    I intend to make them aware by using my freedom of speech.

95.    If I say they are jerks and provide the public with evidence, the public office psychopaths must bite their tongues because my ancestors

fought in our Revolutionary War and gave us rights like freedom of speech.

96.     Nothing the hearing officer said justified his abuse of me by denying me the right to make motions, and the right to expect him to obey the disciplinary rules, which he did not.  I had a right for him to recommend the case be dropped, and that was his opportunity to protect me, as mandated by 42 U.S.C. § 1986, when he saw the conspiracy arrayed against me.  Every refusal to grant my motions was a new 42 U.S.C. § 12203 retaliation and the **denial of the services** of the Indiana Supreme Court that commissioned him, violations of 42 U.S.C. § 12132.

97.     His fear of retribution from the other conspirators was no excuse. He had a duty to protect me and he failed.

**COUNT VI: CONSPIRACY TO VIOLATE FEDERAL DISABILITY RIGHTS, 42 U.S.C. § 1985(3), CONSTITUTIONAL RIGHTS UNDER AMENDMENTS V, IX, AND XIV, 42 U.S.C. § 1983, AND FAILURE TO PROTECT STRAW WHEN THE JUSTICES AND ALL OFFICERS OF THE INDIANA SUPREME COURT HAD A DUTY TO PROTECT HIM FROM HARASSMENT UNDER 42 U.S.C. § 1986.**

98.     My constitutional protections under the First, Fifth, Ninth, and Fourteenth Amendments to the U.S. Constitution were treated as void before the agencies of the Indiana Supreme Court.

99.    My reputation and ability to have a career as a disability rights lawyer has been under attack for 15 years.  This Court has repeatedly lied about me publicly and online in the Indiana Judicial Service Report.  This discipline has been public also, attached to my Indiana Roll of Attorneys entry.  This Court has inflicted severe emotional distress on me with no remorse.

100.  The five Indiana Supreme Court justices and every employee of the Court in a position to help me had a **duty to help me**, not oppose me and violate me by allowing the retaliation tidal wave to continue.  Every one of the employees who hurt me and violated the law should be removed.  Every Indiana Supreme Court justice who failed to protect me should be removed by this Court.

101.  The new governor should be directed to only appoint justices who make a public statement in favor of robust disability rights under state and federal law.  The new justices must publicly renounce using the disciplinary system to hurt disabled lawyers like me.

### COUNT VII: REFUSAL OF DISCIPLINARY COMMISSION CHAIRMAN G. MICHAEL WITTE AND STATE COURT ADMINISTRATOR LILIA GEORGIEV JUDSON TO ENFORCE INDIANA RULE OF PROFESSIONAL CONDUCT, RULE 8.4(g), WAS DISABILITY DISCRIMINATION OR RETALIATION

## IN EACH INSTANCE

102.  Every refusal by Michael Witte and Lilia Judson to enforce Rule 8.4(g) was retaliation under 42 U.S.C. § 12203 and refusal to provide the services of the Disciplinary Commission, 42 U.S.C. § 12132.  Every person who refused to enforce Rule 8.4(g) must be punished now.

## COUNT VIII: INJUNCTION RELIEF

103.  I demand that the Indiana Supreme Court issue an official apology.

104.  I demand that the falsehoods omitting me from the employee roster be remedied in the 2001 and 2002 Indiana Judicial Service Reports.

105.  I demand that everyone involved in disciplining me and all those who knew about it without helping me be removed from office.  This includes all the agency heads and the five justices themselves.

106.  I demand that the Indiana Supreme Court be required to renounce its Disciplinary Commission's attempt to discipline me for opposing disability rights violations.  *In the Matter of Andrew U. D. Straw*, 98S00-1601-DI-00012.  Since discipline is an administrative matter, the ADA may be applied to it.

107.  I demand that the Indiana Supreme Court immediately create a commission for Disability Rights and Fairness, with the power to override and punish any employee of the Court, and provide regular audits and reports on disability rights in the judicial branch, from small claims court to Chief Justice.  This Commission should report to the federal court, not to the Indiana Supreme Court, which has been so inundated with disability violations that it cannot be trusted to monitor an agency that monitors it.  I ask to be appointed as the chairman and choose all of the members.  I ask compensation at $200,000 per year, to be paid by the State of Indiana.

108.  I ask pre-emptive injunctive relief to prevent the Indiana Supreme Court from disciplining me in my law license in any way, either now or in the future.  I will make a separate motion for a temporary restraining order also.

109.  I ask any other relief this Court may deem appropriate to remedy such entrenched, long-standing disability violations and total lack of remorse by the Indiana Supreme Court.

## PRAYER FOR RELIEF

110.  I demand compensation for each act of retaliation under 42 U.S.C.
§ 12203, taken in their fullest possible sense, since I have proven a
conspiracy against disability rights, directed against me as a former
employee of that Court, after I was physically mangled on the way to
work there.  *Barnes v. Gordon*, 536 U.S. 181 (2002) provides for
compensatory damages in ADA, Title II, cases and Rehabilitation Act of
1973, Section 504, cases and I ask the *full* amount of available
compensatory damages due to the exclusion and emotional injuries I
have sustained.  I seek compensatory damages for refusing to provide
me services.  42 U.S.C. § 12132.  The above series of retaliations and
refusals to provide service in combination with the reference to my
Camp LeJeune disability justify considering this case as being about
many violations indeed.  I seek $5,000 per violation in compensatory
damages against each person responsible and the Court itself.

111.  To the extent that the above facts demonstrate intentional
infliction of emotional distress, I see full compensatory and punitive
damages for it against each person responsible and the Court itself.

112.  I seek compensatory and punitive damages as may be available and appropriate under the various civil rights counts, especially under 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and 42 U.S.C. § 1986.  I seek three times compensatory damages as punitive damages.  I seek these damages against each person responsible and the Court itself.

113.  I seek at a minimum $5,000,000 in compensatory damages, plus punitive damages.

114.  I seek injunctive relief as the Court deems fit, per Count VIII.

115.  I ask any other relief that this Court and a jury may deem fit under the circumstances.

## JURISDICTION AND VENUE

116.  This Court has jurisdiction over this action under 28 U.S.C. § 1331, as it contains federal questions based on the Americans with Disabilities Act, Title II, and the Rehabilitation Act of 1973, Section 504, also known as 29 U.S.C. § 794, and the First and Fifth and Ninth Amendments of the U.S. Constitution, as incorporated by the Fourteenth Amendment, plus Due Process rights and federal actions under 42 U.S.C. § 1983, the 42 U.S.C. § 1985(3), and 42 U.S.C. § 1986.

117.  Venue properly lies in the Southern District of Indiana under 28

U.S.C. §1391(b), as a substantial part of the events giving rise to this

action occurred within this district.

I, Attorney Andrew U. D. Straw, certify that to the best of my
knowledge, information, and belief, formed after an inquiry reasonable
under the circumstances, that the above statements and factual
representations are true and correct under penalty of perjury.

Respectfully submitted,

s/ ANDREW U. D. STRAW

1900 E. Golf Rd., Suite 950A
Schaumburg, IL 60173
Telephone: (312) 985-7333   Fax: (877) 310-9097
andrew@andrewstraw.com

December 25, 2016

## CERTIFICATE OF SERVICE

I, Andrew U. D. Straw, certify that I filed the above COMPLAINT and EXHIBITS and CIVIL COVER SHEET and SUMMONS FORMS and IFP MOTION with EXHIBIT with the Clerk of this Court via the Court's CM/ECF system on December 25, 2016 and this will be served on all attorneys of record as well as permanently available through Pacer.gov.  I will provide a copy via email to the office of the Attorney General of the State of Indiana, Ms. Betsy Isenberg, Betsy.Isenberg@atg.in.gov.  I have moved as part of my initiating documents for the Court to direct the U.S. Marshall Service to serve my complaint, given my request for IFP status.

Respectfully submitted,

s/ ANDREW U. D. STRAW
1900 E. Golf Rd., Suite 950A
Schaumburg, IL 60173
Telephone: (312) 985-7333
Fax: (877) 310-9097
andrew@andrewstraw.com
*Plaintiff*, Proceeding *Pro Se*

December 25, 2016